CLARK SUMNER CUMMINGS, Appellant, v. PERCY LAINSON, Warden, Appellee.

No. 47226.

(Reported in 33 N. W. 2d 395)

, AUGUST 2, 1948.

REHEARING DENIED OCTOBER 22, 1948.

Raymond E. Hanke and James D. Brien, both of Des Moines, for plaintiff-appellant.

Johnson, Martin, Johnson & Phelan, of Fort Madison, for defendant-appellee.

MULRONEY, J.—Plaintiff, an inmate of the state penitentiary at Fort Madison, filed his petition for a writ of habeas corpus alleging he is being illegally restrained of his liberty by the defendant, Lainson, warden of that institution. The writ was denied and plaintiff appeals and here argues that the judgment under which he was committed to the penitentiary for life was void because (1) the sentencing court did not have jurisdiction to commit plaintiff to the penitentiary at Fort Madison, and (2) all proceedings in connection therewith failed to grant unto him his constitutional rights, both of the State of Iowa and of the United States of America and his statutory rights under the laws of the State of Iowa.

I. In argument under the second proposition plaintiff asserts "he was denied the right to a fair and impartial trial because of trickery." The record shows plaintiff pleaded guilty to the crime of entering a bank with intent to rob, in violation of section 708.9, Code, 1946, and was sentenced to the State Penitentiary at Fort Madison, Iowa for life. He was arrested in Rock Island, Illinois on April 24, 1946. He testified he had been drinking before his arrest and that he was placed in the Rock Island jail about 11 p.m., and the next day he was taken to Fort Madison, Iowa and placed in the Fort Madison jail about seven o'clock in the evening. The next day, or April 26, he was taken to the courtroom in Fort Madison about ten or eleven o'clock in the morning where he pleaded guilty to the county attorney's information and received the sentence as aforesaid. Plaintiff testified that on the morning of April 26 he overheard a conversation between the county attorney and the sheriff wherein the county attorney told the sheriff that he would get a light sentence and that he would be taken to court and allowed to plead guilty. He stated that a little later he was taken over to the court where he was taken into the judge's chambers and while there the judge signed some papers which were brought

to him by the county attorney. He said that while in the judge's chambers he saw a man, whom he later learned was to represent him as attorney, and that he was taken into the courtroom and he stood up before the judge and when asked how he pleaded, he stated that he guessed he was guilty of something. Whereupon judgment was pronounced and shortly thereafter, and on the same day, he was taken to the penitentiary. He also testified that before he was brought into court the deputy sheriff, Klopfenstein, gave him a pint of whisky and that he drank it.

R. F. Gregson, state agent, testifying for defendant, stated that he was assigned to the case of the bank robbery at Denmark, in Lee county, the morning it took place on April 23 or 24; that he interviewed plaintiff in the jail at Rock Island on the afternoon of April 25; that plaintiff was sober; that plaintiff gave him a detailed account of his robbery of the bank at Denmark, beginning with his trip from Chicago the day before the robbery; told him the caliber of the gun he used; the denomination of the bills he got from the bank; the amount obtained in the robbery; and many other details. He stated that after the interview plaintiff was taken before a circuit judge at Rock Island where he waived extradition and he was then taken to the jail at Fort Madison. Gregson further testified that he saw plaintiff about nine o'clock the next morning when he and the county attorney went to the sheriff's office and he was present when the county attorney talked to plaintiff in the sheriff's office and told him if he pleaded guilty or was convicted he would receive a life sentence. He stated the county attorney did not at any time say that plaintiff would get a light sentence in the event of a plea of guilty; that he was with the county attorney all morning until after the plaintiff pleaded guilty; that he was present in the courtroom and heard plaintiff say he was guilty not that he "guessed he was guilty." He stated that plaintiff was not intoxicated when he saw him in the Rock Island jail or at any time thereafter. Gregson's testimony was all corroborated by G. M. Strand, state agent, and F. L. Klopfenstein, deputy sheriff, who accompanied him on the trip to and from Rock Island. They all said plaintiff was not intoxicated; that they did not smell liquor on his breath; and that his speech was clear and his appearance normal. Deputy Sheriff Klopfen-

stein denied that he had ever given him any whisky while he was in jail.

Roy W. Deitchler, a practicing attorney in Fort Madison, testified he was called by someone on the morning of April 26 and told that he had been appointed to represent plaintiff. He did not recall whether it was the court, the bailiff, or the county attorney, who called him and advised him that he had been appointed to represent plaintiff but he went to the jail and interviewed plaintiff. He said plaintiff told him the details of the crime and that he had admitted committing the crime to others. The attorney testified that he told plaintiff the sentence for bank robbery was a mandatory penitentiary sentence for life and he stated: "When I advised him he could stand trial, he didn't seem to be a bit interested in standing trial * * * he said he wanted to plead guilty." The attorney said he talked to the judge about the case after his interview with plaintiff and then to the county attorney and that he went to the courtroom and was there when plaintiff entered his plea of guilty.

The argument for plaintiff is predicated upon section 1 of the Fourteenth Amendment to the Constitution of the United States and sections 1, 9, and 10 of Article I of the Constitution of Iowa which guarantee "due process of law" to every person charged with crime and (in section 10 of Article I, Constitution of Iowa) the right "to have the assistance of counsel." But plaintiff's entire argument that due process was not observed or that he was denied the assistance of counsel is based entirely upon his own testimony. The argument ignores the testimony of defendant which was in sharp conflict with plaintiff's testimony on the issues of whether plaintiff was under the influence of liquor, and whether the plaintiff was told he would receive a light sentence in the event he pleaded guilty.

The writ of habeas corpus does not invoke the court's equitable powers and the appeal is not de novo, except where the writ is used to determine the question of custody of a minor child. Madsen v. Obermann, 237 Iowa 461, 22 N. W. 2d 350; Adams v. Stewart, 197 Iowa 490, 197 N. W. 464; 39 C. J. S., Habeas Corpus, section 120d. Upon this review we merely determine whether there is sufficient evidence to support the judgment of the trial court.

The judgment of the trial court recites:

"The court finds that the court passing sentence had juris-diction of the plaintiff and of the subject matter, which was not obtained by trickery on the part of any law enforcing officer.

"The statements * * * and argument with reference to the actions on the part of the county attorney and other law enforce-ment officers are not only not substantiated by the record but are definitely contradicted thereby, the statements of the plain-tiff in this respect being unworthy of belief, this court being of the opinion that most of the plaintiff's testimony comes as an afterthought on his part and is not a true statement of the actual facts.

"In connection with the plaintiff's complaint that he was not represented by counsel, the court finds that the plaintiff was duly represented by counsel as contemplated by the laws of this State and that he was fully advised of his rights and the consequences of his actions, both by the county attorney of Lee County and the attorney appointed by the court to represent him. * * *

"The plaintiff was capably represented by a reputable mem-ber of the Lee County Bar, one in which this court has the utmost confidence * * *."

While the record shows the law-enforcing officers acted with a great deal of speed, in view of the seriousness of the offense, we cannot say this amounted to a denial of due process under the record in this case. The court order sentencing plaintiff recites:

"The defendant [appellant here] having been duly arraigned both personally and through his attorney, waives time to plead and enters a plea of guilty to the crime as charged, waives time of sentence and specifically requests that sentence be immediately pronounced * * *."

Upon the whole record we hold there is substantial evidence supporting the judgment of the trial court to the effect that the judgment of the sentencing court was not void; that the

jurisdiction of the sentencing court was not obtained by trickery; and plaintiff was duly advised of his rights and adequately represented by counsel.

II. Plaintiff pleaded guilty to the crime of entering a bank with intent to rob, in violation of section 708.9, Code, 1946, and was sentenced to the penitentiary for life. The latter statute provides the violator "shall, upon conviction * * * be imprisoned in the penitentiary at hard labor for life, or for any term not less than ten years." But plaintiff argues he should not have been committed to the penitentiary or to any place except the Men's Reformatory at Anamosa, for under section 789.16, Code, 1946 it is provided that: "Any male person who shall be committed to the penitentiary, except those convicted of murder, treason, sodomy, or incest, and who at the time of commitment is between the ages of sixteen and thirty years, and who has never before been convicted of a felony, shall be confined in the men's reformatory."

Plaintiff was twenty-three years old at the time he was sentenced and the record shows he had not been convicted of any prior felony. Under the above statutes the plaintiff should be confined in the Men's Reformatory at Anamosa and not in the State Penitentiary at Fort Madison. But this does not mean that the judgment under which the plaintiff was confined in the penitentiary is void or that the writ of habeas corpus should issue in this case.

Section 708.9 makes the penitentiary commitment mandatory, and section 789.16 merely undertakes to name the place of confinement for certain law violators who have received a penitentiary commitment. The use of the words "committed" and "confined" are somewhat confusing but actually the Men's Reformatory at Anamosa is nothing more than the reformatory department of the state penitentiary. Prior to 1907 the institution at Anamosa was called a penitentiary. By chapter 192, Acts of Thirty-second General Assembly, its name was changed to a reformatory, the first section of that chapter providing: "Hereafter the penitentiary at Anamosa shall be officially known and designated as 'The Reformatory', and shall be the reformatory department of the state penitentiary of Iowa."

In State v. Smitch, 185 Iowa 80, 81, 169 N. W. 680, we held that after the change of name the Men's Reformatory at Anamosa "continues a penitentiary, but is merely to bear the name 'The Reformatory'; and, to avoid any misunderstanding as to its character, the legislature declared that it shall be a part of the penitentiary—i.e., the reformatory department."

The order committing plaintiff was wrong in that it named the State Penitentiary at Fort Madison as the place of confinement or failed to name the reformatory department of the State Penitentiary as the place of confinement. But this was only an irregularity that would not void the judgment and one that can be corrected without granting the writ.

Section 663.38, Code, 1946 provides that in actions for habeas corpus: "* * * although the commitment of the plaintiff may have been irregular, if the court or judge is satisfied from the evidence that he ought to be held to bail, or committed, either for the offense charged or any other, the order may be made accordingly."

In Jackson v. Boyd, 53 Iowa 536, 538, 5 N. W. 734, 736, we held a commitment to jail until fine and costs are paid was probably irregular in failing to state the number of days of confinement, but the defendant should not have been discharged on writ of habeas corpus, for under the statute as stated in the opinion:

"If it be conceded the above mentioned defects in the warrants [of commitment] were sufficient to entitle the plaintiff to be discharged, this should not have been done, but he should have been remanded into custody and an appropriate order made in relation thereto."

While State v. Davis, Iowa, 29 N. W. 2d 416 is not a habeas corpus action, we there held, in effect, that a commitment to a city jail, when the statute violated provided for confinement in the county jail, was an irregularity such as would be corrected in this court upon defendant's appeal by directing the trial court to make a proper commitment order to the county jail.

In view of our statute making the reformatory a department of the penitentiary and our statute which invests the court in a habeas corpus action with broad powers to correct an

irregular commitment order, we have not thought it necessary to review the authorities of other jurisdictions involving habeas corpus actions in connection with sentences that designated an improper place of imprisonment. Many such cases are collected in the annotation in 76 A. L. R., page 510. In one such case, In re Bonner, 151 U. S. 242; 260, 14 S. Ct. 323, 327, 38 L. Ed. 149, 152, it is stated:

"The judges of all courts of record are magistrates, and their object should be not to turn loose upon society persons who have been justly convicted of criminal offenses, but, where the punishment imposed, in the mode, extent, or place of its execution, has exceeded the law, to have it corrected by calling the attention of the court to such excess. We do not perceive any departure from principle or any denial of the petitioner's right in adopting such a course. He complains of the unlawfulness of his place of imprisonment. He is only entitled to relief from that unlawful feature, and that he would obtain if opportunity be given to that court for correction in that particular."

The above quotation is much in point in this case even though in the Bonner case the court did feel that it would be necessary to have the writ issue and other measures taken to correct the sentence. Here our statute allows the correction of the irregular sentence in the habeas corpus action. The correction of the sentence in the matter of the place of confinement is the only relief to which plaintiff is entitled.

With directions to modify the sentencing portion of the judgment so that plaintiff be ordered confined in the Men's Reformatory at Anamosa instead of the State Penitentiary at Fort Madison, the cause is affirmed.—Modified, affirmed and remanded.

All JUSTICES concur.