CHARLES MERLE SEWELL, appellant, v. PERCY A. LAINSON, warden, appellee.

No. 48242.

(Reported in 57 N.W.2d 556)

556

MARCH 10, 1953.

Prince & Guthrie, of Webster City, for petitioner-appellant.

Robert L. Larson, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and Everett G. Scott, County Attorney, for respondent-appellee.

THOMPSON, J.—On April 23, 1952, the petitioner-appellant, an inmate of the Iowa State Penitentiary at Fort Madison, filed his petition in habeas corpus against the respondent-appellee, the warden of the prison. A writ was issued, returnable on May 2, 1952. The cause was actually reached for trial on May 6 following. At the conclusion of the case the trial court rendered judgment annulling the writ and remanding the petitioner to the custody of the respondent. From this judgment we have the present appeal.

It appears from the record that the petitioner was arrested at Chariton, Iowa, on February 8, 1951, on a warrant from Fayette County. He was returned to the latter county, and on February 10, 1951, he entered a plea of guilty to a charge of obtaining money by false pretenses in the Fayette District Court,

and was sentenced to confinement in the State Penitentiary for an indeterminate period not exceeding seven years. He was delivered to the charge of the respondent as warden of the penitentiary on February 12, 1951. Petitioner assigns five errors as grounds for reversal. One and two, stated together for brevity and because they are closely related, assert that the court erred in finding petitioner was not under the influence of narcotic drugs at the time of his hearing and entry of plea of guilty, and in finding his condition at that time was not such as to entitle him to relief by habeas corpus. Three and four, likewise related and therefore combined here for statement and consideration, allege that the court was in error in sustaining objections to and in striking and excluding proffered evidence petitioner had been deprived of the services of counsel by threats and coercion immediately after his hearing, plea of guilty and sentence, and in holding that such denial of counsel did not result in depriving petitioner of due process of law, entitling him to relief by habeas corpus. The fifth error assigned is an omnibus or blanket assignment, stating the court was in error in finding on the whole record that petitioner was not deprived of due process of law, then setting up several varying details of evidence which pertain, so far as material at all, to assigned errors Nos. 1, 2, 3 and 4. We shall consider only the first four alleged errors.

I. The claim that the petitioner was under the influence of narcotics, specifically opium, was not made in the original petition for the writ. It seems to have been an afterthought, and arose during the examination of petitioner by his counsel upon the trial of the habeas corpus action. When objection was made by the county attorney of Fayette County, as counsel for respondent, that the matter sought to be inquired into was not within the issues, petitioner's attorney, Mr. Guthrie, then asked and was granted leave to amend. Petitioner then testified he had been an opium addict for twenty-five years; his normal dose was two and one-half grains, and he took two doses a day. "If I did not get my usual dosage, I became ill and I requested Sheriff House to obtain morphine for my use while I was in the county jail at West Union." He also said that on the morning

of February 10, 1951, about thirty or forty minutes before the hearing at which he entered his plea of guilty, the sheriff came to his cell and gave him three and one-half grains of morphine, which the witness administered to himself by hypodermic injection. The sheriff testified he gave petitioner the morphine which he obtained by prescription, but he did not know the amount.

Petitioner's counsel then asked him whether, at the time he was brought before the court for his hearing, plea and sentence, in his opinion, he was under the influence of the morphine. To this, objection that it was an improper opinion and was immaterial was made and sustained. The next question was: "Is the dosage of morphine which you describe sufficient to cause an effect upon yourself?" Objection that the question called for an opinion and there was no foundation laid was made and sustained.

Later, upon examination of the sheriff upon the same subject, he was asked what apparent effect the drug had upon petitioner, and over objection that there was no proper foundation laid, was permitted to answer: "Well, it helped him; that is what it did, I would say."

Why the sheriff was permitted to give his idea as to petitioner's condition after taking the drug while the petitioner himself was denied the right to express his own thought on the subject is not clear. The user should have at least as clear an idea of the effect upon himself as a casual observer. We think there would have been error in the exclusion of the testimony of the petitioner on this point except that no offer of proof was made. 3 Am. Jur., Appeal and Error, section 354, page 97. So we have no idea as to what the excluded evidence might have shown. It might have supported petitioner's case, and it might have harmed it. We cannot predicate error upon a speculation as to the answer. Counsel urges, however, that it is well known opium is a poisonous drug, and we should take judicial notice of that fact. We also take judicial notice, however, that one who is an opium addict is nerve-wracked and ill when denied the drug, and approaches normalcy only when he has access to it. We said in State v. Salmer, 181 Iowa 280, 283, 164 N.W. 620, 621: "It is a matter of common knowledge * * * that men

under the influence of liquor do not possess the same cool judgment and discretion that men possess when not under its influence." See also State v. Dahnke, 244 Iowa 599, 57 N.W.2d 553. If we are permitted to know what everyone else knows concerning liquor and its effects, we see no reason why we cannot likewise take notice of the reaction of drug addicts to the absence or presence of their particular brand of self-destruction. It may well have been if the opium had not been furnished to petitioner he would have been before us, and with much more cause, complaining that his plea of guilty was entered when he was not mentally competent to realize what he was doing because of the nervous and other physical sufferings occasioned by deprival of his habitual narcotic.

██ This is not to say he might not be entitled to show, if he can, upon a retrial, that his condition was affected at the time of his plea. We hold only that because of the lack of any offer of proof he has failed to make any showing of error upon the matter of his condition as affected by the dosage of morphine. He says he requested the trial court to send him to a hospital instead of to the penitentiary, but fails to say he gave the court any reason for this request. The court's record shows no reason appeared why sentence should not be pronounced, and we presume the regularity of actions of officials and courts unless the contrary is made to appear. Burtch v. Zeuch, 200 Iowa 49, 55, 202 N.W. 542, 39 A. L. R. 1349. Moreover, the petitioner testifies he had agreed to plead guilty on the previous day, that he knew the charge and the penalty, and he does not claim there was any variation in the proceedings or penalty from what he had been advised would be incurred. His testimony as to what happened in the courtroom is reasonably clear, and does not indicate he was in any way affected by the drug. We find no error of the court under assignments Nos. 1 and 2.

II. Assigned errors Nos. 3 and 4 relate to matters occurring after the imposition of sentence. Since these are important to the proper determination of this cause, we set out the proceedings relating thereto before the Lee District Court in some detail. The record shows this from the direct examination of petitioner:

"Q. After your plea of guilty and sentence, state whether or not you had a conversation with your wife, Mildred Sewell, by telephone in connection with the obtaining of an attorney to represent you?

"Mr. Scott: I object to this question for the reason that it is entirely irrelevant and incompetent as to whether or not the defendant had any conversation with anyone after he was convicted.

"The Court: Sustained.

"Mr. Guthrie: If the Court please, it is our attempt to show that the plaintiff desired counsel immediately subsequent to his hearing and that at that time there were material steps that could have been taken by such counsel on his behalf which might have assisted him in obtaining a fair hearing before the Court.

"The Court: Well, as I see it, that wouldn't tend to prove any issue in this case. That wouldn't have anything to do with the jurisdiction of the Court in sentencing of this kind. The objection will be sustained as I said before.

"By Mr. Guthrie:

"Q. State whether or not, on Monday, February 12th, you had a conversation with the County Attorney, Mr. Scott, with reference to the obtaining of an attorney to represent you.

"Mr. Scott: Same objection. The question is objected to for the reason that it calls for a matter which is irrelevant and immaterial to any issues in this case.

"The Court: Objection sustained.

"Q. State whether or not, on February 12, 1951 you had a telephone conversation in the presence of the County Attorney, Mr. Scott, and Sheriff House with William D. Guthrie of Webster City, Iowa, the substance of which conversation was as follows: That said attorney should file no motions or proceedings on your behalf or reopen your criminal proceeding for the reason that in the event such action were taken, the County Attorney threatened to rearrest your wife, Mildred Sewell, on the charge of false pretenses.

"Mr. Scott: Same objection as last stated. Whatever happened after the—

"The Court: Sustained.

"Mr. Scott: — after the conviction is irrelevant and immaterial.

"Mr. Guthrie: We offer to prove by the witness Sewell that on February 11, 1951 he engaged in a long-distance telephone conversation with his wife, Mildred Sewell, who was then in Webster City, Iowa. In the course of which conversation, the said Mildred Sewell stated that she had procured William D. Guthrie as counsel and attorney to represent the plaintiff here in an attempt to reopen the criminal proceedings in the District Court of Fayette County, and that further, on the early morning of February 12, the plaintiff had a conversation with the County Attorney, Mr. Scott, and the Sheriff, Mr. House, the substance of which was that in the event the plaintiff allowed his attorney, William D. Guthrie, to file any motions or to undertake any proceedings to open up the criminal judgment, that the County Attorney would then immediately order the rearrest of the plaintiff's wife, Mildred Sewell, on the charge of false pretenses and would prosecute her under it; that subsequent to said conversation and on the same day, he heard the County Attorney place a call to Attorney William D. Guthrie at Webster City, Iowa; that at the time, the County Attorney had the plaintiff talk to the said William D. Guthrie, and that the plaintiff, by reason of the County Attorney's threat to rearrest his wife, instructed his attorney to do no act in connection with reopening the criminal proceedings in Fayette County.

"Mr. Scott: I object to the offer for the—

"The Court: What ground?

"Mr. Scott: On the ground that the offer is only of testimony which is incompetent, irrelevant and immaterial to any issue in this case.

"The Court: It will be sustained."

Mr. Scott, the county attorney above referred to, took the stand as a witness for respondent. On cross-examination he was asked concerning a telephone conversation with petitioner's counsel (Mr. Guthrie, the cross-examiner) on February 11 or 12, one or two days after his plea of guilty and sentence. He admitted having a talk by long-distance telephone, but denied he made any threat of prosecution of petitioner's wife if, through

Mr. Guthrie, petitioner took any steps to reopen the case. He admitted, however, that he told Mr. Guthrie she was subject to the same prosecution as petitioner. At the close of the cross-examination, upon motion of Mr. Scott, the court struck out all testimony concerning this conversation as being "irrelevant and incompetent to any issue in the case."

In rebuttal Mr. Guthrie took the witness stand in behalf of his client. He testified he called Mr. Scott on February 11 and told him he had been retained by Mildred Sewell, petitioner's wife, and it was his intention to file certain motions for the reopening of his case. Scott told him Sewell had pleaded guilty under an agreement that his wife would be set free, but if any papers or motions were filed in the cause he would immediately cause Mildred Sewell to be rearrested. He further testified that on the next morning, February 12, he received a long-distance call from Mr. Scott, in which the latter again said if Guthrie filed any papers, pleadings or motions on behalf of Sewell his wife would be rearrested on the charge of "false pretenses." Scott further said he doubted that Sewell wished Guthrie to represent him. After talking with Mrs. Sewell, Guthrie again telephoned Scott at which time Scott said if any action were taken to disturb the status quo within one year he would cause the arrest of Mildred Sewell. Scott then called petitioner to the phone and the latter advised Guthrie he was to undertake no proceedings on his behalf.

On surrebuttal Mr. Scott again took the stand. He testified that after receiving the call, or calls, from Mr. Guthrie, he talked with petitioner, telling him Mr. Guthrie was purporting to act as his attorney, and if he did not want him he should tell him so. At petitioner's request he then placed a call to Mr. Guthrie at Webster City and when it came through turned the telephone over to him. He did not remember whether he heard the conversation between Sewell and Guthrie.

At the close of Mr. Scott's testimony petitioner's counsel moved to strike it as not proper rebuttal or surrebuttal. Mr. Scott, as counsel for respondent, then moved to strike all the testimony of Mr. Guthrie relating to telephone conversations "between himself and the county attorney of Fayette County

after the petitioner's conviction." Apparently this was based on the grounds of irrelevancy and incompetency. The trial court then said:

"Your objection will be sustained except as to that part where Mr. Guthrie said that you told him that the defendant, or his plaintiff, plead [sic] guilty on condition that his wife be not prosecuted. That will remain, and Mr. Guthrie, your objection [motion?] will be sustained. Cut all your testimony out except that one proposition, both of you."

The court's ruling thus struck from the record all testimony regarding any threats of rearrest and prosecution of petitioner's wife made after his conviction, and all denial thereof. It was the court's evident thought that any matters arising after the conviction were immaterial. This shows not only in his rulings on evidence but in his opinion and judgment annulling the writ and remanding the petitioner to the custody of the respondent. In this he fell into error. If he had permitted the testimony to remain in the record, had weighed it, and had found that petitioner had failed to sustain the burden of proof necessarily devolving upon him, he would have been on sound ground. Habeas corpus is triable as an ordinary proceeding, and, except in cases involving custody of minor children, upon review we determine only whether there is substantial evidence supporting the findings of the trial court. Cummings v. Lainson, 239 Iowa 1193, 1196, 33 N.W.2d 395, and cases cited. But, since it was denied admittance or was stricken from the record, we cannot say what weight might have been given to the offer of proof of petitioner as a witness for himself, or to the testimony of his counsel. If the court had considered it he might have found it sufficient to support a finding for petitioner. It is as though material and competent evidence had been excluded from a jury.

We think under modern holdings of the Supreme Court of the United States we are bound to consider any infringement on the constitutional rights of those accused of crimes as denials of due process. We said in Mart v. Lainson, 239 Iowa 21, 23, 30 N.W.2d 305, 306: "The only issues germane to this appeal

are the issues involving jurisdiction, due process, and the included question of the existence of the crime charged."

The United States Supreme Court has apparently avoided the long-established rule that the only material question on habeas corpus is jurisdiction by making due process a jurisdictional question.

The trial court cited and relied upon Lockard v. Clark, 166 Iowa 556, 147 N.W. 900, holding that if the petitioner was tricked into entering a plea of guilty he should have raised the question when sentence was pronounced or applied for correction of the record; and such cases as McCormick v. Hollowell, 215 Iowa 638, 246 N.W. 612, Convey v. Haynes, 230 Iowa 485, 298 N.W. 647, 134 A. L. R. 966, and Reeves v. Lainson, 234 Iowa 1034, 14 N.W.2d 625, which lay down the rule that if the sentencing court has jurisdiction of the person and the subject matter, habeas corpus will not lie. These were not concerned with the recent decisions of the United States courts which either add lack of due process by invasion of a constitutional right as an additional ground for sustaining the writ or make such lack a jurisdictional defect.

The trial court also referred to the well-established rule that habeas corpus may not be used in lieu of appeal. Thrasher v. Haynes, 221 Iowa 1137, 264 N. W. 915, and many other cases announce this precept. This is still the rule, but it does not prevent investigation into matters outside the record, particularly under such circumstances as are found if petitioner's evidence should be accepted by the trial court as sufficient. We shall advert to this subject later.

The extent to which the federal courts have gone on the question of habeas corpus is illustrated by the following quotation from Frank v. Mangum, 237 U. S. 309, 331, 35 S. Ct. 582, 588, 59 L. Ed. 969, 982: "* * * a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him.

* * * it is open to the courts of the United States upon an application for a writ of habeas corpus to look beyond forms and inquire into the very substance of the matter * * *." In Johnson v. Zerbst, 304 U. S. 458, 465, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461, 146 A. L. R. 357, it is said:

"True, habeas corpus cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of habeas corpus cannot be used as a writ of error.' [Quoting from Woolsey v. Best, 299 U. S. 1, 2, 57 S. Ct. 2, 81 L. Ed. 3, 4.] These principles, however, must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The scope of inquiry in habeas corpus proceedings has been broadened—not narrowed—since the adoption of the Sixth Amendment."

▮ Since the federal courts have announced the principle that in habeas corpus proceedings they will examine the records and will go behind the records in courts of the various states to determine whether the petitioner's rights under the constitution of the United States have been denied him and so lack of jurisdiction in the state court appears, we think it incumbent upon us to make the same examination for ourselves. The material parts of the Federal Constitution for our inquiry are that part of the Sixth Amendment giving the accused the right of counsel, and so much of Section 1 of the Fourteenth Amendment as prohibits deprivation of liberty without due process of law, and guarantees to all persons the equal protection of the laws.

▮ As a preliminary it should be noted that while the right of appeal was not known to the common law and is entirely statutory (State v. Olsen, 180 Iowa 97, 99, 162 N.W. 781), yet where such right is given it is substantial, and an accused may not be deprived thereof by duress, coercion, fraud or trickery or by any other act or failure to act upon the part of the state which unfairly denies him his appeal. Boykin v. Huff, 73 App. D. C. 378, 121 F.2d 865; Cochran v. Kansas, 316 U. S. 255, 62 S. Ct. 1068, 86 L. Ed. 1453. We think the same rule must apply to other procedures following conviction, which the convicted

person has a statutory right to attempt. State v. Guerringer, 265 Mo. 408, 178 S.W. 65, 67. Chapter 786, Code of 1950, gives such a person the right to file a bill of exceptions; under section 786.1 he may thus "make the proceedings * * * appear of record which would not otherwise so appear"; under section 786.4 exceptions may be taken to "any action or decision of the court which affects any other * * * substantial right of either party, whether before or after the trial of the indictment * * *." Chapter 787 grants the defendant in a criminal case the right to move for a new trial, and chapter 788 outlines procedures for a motion in arrest of judgment, "that no judgment be rendered upon a verdict against him, or on a plea of guilty * * *." Section 788.1. Section 788.2 provides that this "motion may be made at any time before or after judgment, during the same term."

All of these were statutory procedures which the petitioner herein had the right to attempt, and in so doing to have the aid of counsel. Whether he would have been successful is beside the point; it is not our province to decide that question at this time.

Some examination of the situation as it existed on the date of the first call from Guthrie to Scott and of what occurred at that time is now necessary. Petitioner had entered his plea of guilty on February 10, and had been sentenced. On the next day the first telephone conversation was held. Since we cannot say whether the trial court would have found the weight of evidence with petitioner or against him, we must accept the situation in the light most favorable to him. According to Guthrie, two conversations were held with Scott in each of which the county attorney threatened that if petitioner should exercise his rights to attempt to reopen the case to set aside the judgment of conviction, petitioner's wife would be rearrested and charged with the offense of obtaining money by false pretenses. This was a threat which violated petitioner's rights. In Fromcke v. State, 37 Okla. Cr. 421, 258 P. 927, 928, the defendant was induced to enter a plea of guilty in the state court under threat from a federal officer that if he did not do so he would be charged in the federal court where he would be held longer and less leniently handled. The Oklahoma Court of Criminal Appeals held that

his motion asking leave to withdraw his plea of guilty should have been granted and that the lower court abused its discretion in refusing to permit him to do so. See also People v. Schwarz, 201 Cal. 309, 257 P. 71. These were cases in which the defendant exercised his right to move and to appeal; but we shall presently point out that the real vice of the threats made by the county attorney here—if they were made—was the petitioner was thereby induced to surrender his right to attempt to reopen his case, and so lost his right of appeal also.

If we should adhere to the rigid rule that petitioner's remedy was by appeal, we would thereby relegate him to an appeal upon a record which lacked a showing of many of the essential matters which might have given him relief. There was nothing in the original record to show what, if any, effect the dosage of morphine had upon him, nor whether he had been induced to enter his plea by threats or promises or without full understanding of his rights to counsel and otherwise. The record on its face is regular, and in the absence of any showing of the matters referred to would almost certainly have been held against him. By a motion to reopen or otherwise he could have gotten these things before the trial court, and if unsuccessful there they would have been before this court on appeal. But—still assuming that the fact question would have been resolved in petitioner's favor—he was, by the threat to arrest and prosecute his wife, coerced into refusing counsel and so foregoing the making of such a record. We said in Lockard v. Clark, supra, at page 559 of 166 Iowa:

"If, as a matter of fact, the applicant was deceived or tricked into a plea of guilty, or if, as he seems now to claim, he did not understand that such a plea was entered, he was certainly undeceived when judgment was entered against him, and it was open to him to raise the question then and there, and if the record did not truly reflect the facts, he could have applied for its correction."

In Cochran v. Kansas, supra, 316 U. S. at pages 256, 257, page 1069 of 62 S. Ct., is this:

"Since these allegations relate to a period *subsequent* to Cochran's commitment, and since that is the latest event referred to in the record, the record itself affords no refutation. * * * As we have pointed out, the record of the trial court proceedings, relating as it did to a period ending with Cochran's commitment, *could prove nothing with respect to independent subsequent events.*" (Italics ours.)

If we grant that under ordinary circumstances petitioner should have made some effort in the trial court to show his reasons why the judgment of conviction should be set aside, yet we must hold that he was prevented from doing so, through his counsel, by threats and coercion. This amounted to denial of due process under the Fourteenth Amendment to the Federal Constitution.

The foregoing discussion is relevant to the ruling of the trial court in excluding evidence of the threats after the sentence. It is apparent from the record that Mr. Scott denied such threats were made, and we do not attempt to determine wherein lies the truth, or the weight of the evidence. We hold only that it was the duty of the trial court to consider the testimony on both sides and to make his determination therefrom, and that in refusing to do so he fell into error.

 III. An unfortunate aspect of the case is, that on material points it tends to degenerate into a contest of veracity between the opposing attorneys. Each took the witness stand to give his version of what happened, and they are strongly contradictory. In Storbeck v. Fridley, 240 Iowa 879, 887, 38 N.W.2d 163, 168, we quoted with approval from the annotations to Miller v. Urban, 123 Conn. 331, 195 A. 193, 118 A. L. R. 951, 954:

" 'The overwhelming weight of authority supports the view that, although it is a grave breach of professional ethics for an attorney of a party to testify as to anything other than matters of a formal nature without withdrawing from the litigation, he is not incompetent so to testify, and his testimony is clearly admissible, if otherwise competent.' "

We then said: "Such is the general rule, and the rule established in Iowa."

The question is not raised by either side in the case at bar, perhaps because neither is entirely free from fault. Perhaps petitioner's counsel feels that the necessities of his client, financial and otherwise, required him to take the witness stand in connection with very material matters, and opposing counsel conceivably thought it necessary to rebut in person since his knowledge of many of the matters was exclusive on his side of the case. But counsel actively engaged in the trial of a case should not take the witness stand to testify to a controversial matter if it can reasonably be avoided, nor should he ordinarily wait until the last minute before withdrawing. See 38 Iowa Law Review, pages 139 to 146, inclusive.

The matters discussed and determined in Division II require a reversal and remand.—Reversed and remanded.

SMITH, C. J., and BLISS, OLIVER, WENNERSTRUM, MULRONEY, and HAYS, JJ., concur.

LARSON, J., takes no part.