THOMAS KURT HEROLD, appellant, v. CHARLES H. HAUGH, warden, Men's Reformatory, Anamosa, appellee.

No. 52064.

OCTOBER 18, 1966.

Robert H. Story, of Anamosa, for appellant.

Lawrence F. Scalise, Attorney General, Ronald A. Riley, Assistant Attorney General, and Robert R. Beckmann, of Anamosa, County Attorney, for appellee.

GARFIELD, C. J.—Plaintiff Herold sought his release by habeas corpus from confinement in the Men's Reformatory at Anamosa where he was serving a sentence for forgery. Following a hearing the district court denied relief and plaintiff has appealed. We affirm the decision.

Sole ground for the relief sought in the district court was that plaintiff's plea of guilty to the crime of forgery was not voluntary but was the result of coercion, the judgment of conviction was therefore not consistent with due process of law and cannot stand. The court found from the evidence the plea was voluntary and annulled the writ. Upon this appeal plaintiff contends this finding is erroneous and annulment of the writ is not in accord with the facts and law.

■ I. A plea of guilty must be entirely voluntary and not induced by coercion. A plea so induced is inconsistent with due process of law and will not support a judgment and sentence based thereon. State v. Bastedo, 253 Iowa 103, 106–109, 111 N.W.2d 255, 256–258; State v. Kellison, 232 Iowa 9, 14, 4 N.W.2d 239, 242; 21 Am. Jur.2d, Criminal Law, section 485; 22 C. J. S., Criminal Law (1961), section 423(2). See also Woodson v. Bennett, 256 Iowa 807, 812, 128 N.W.2d 903, 906.

■ II. The burden rested on plaintiff to prove by a preponderance of the evidence the allegation of his petition for a writ of habeas corpus that his plea of guilty was involuntary and the result of coercion. Doerflein v. Bennett, 259 Iowa 785, 794, 145 N.W.2d 15, 21, and citations; 39 C. J. S., Habeas Corpus, section 100a(1); 25 Am. Jur., Habeas Corpus, section 150. See also State v. Bastedo, supra.

■ III. We have uniformly held the trial court's findings in a habeas corpus action not involving custody of a child are binding upon us if supported by substantial evidence. Hoskins v. Bennett, 256 Iowa 1370, 1377, 131 N.W.2d 510, 515; State v. Bastedo, supra; Thomas v. Purcell, 252 Iowa 177, 180, 104 N.W.2d 823, 825; Sewell v. Lainson, 244 Iowa 555, 564, 57 N.W.2d 556, 561; Cummings v. Lainson, 239 Iowa 1193, 1196, 33 N.W.2d 395, 397, 398, and citations (certiorari denied, 336 U. S. 944, 69 S. Ct. 811, 93 L. Ed. 1101).

IV. Plaintiff appeared in district court at Cedar Rapids on August 20, 1964, to be arraigned on a charge of forgery. The judge instructed him to obtain legal counsel before entering a plea. On August 24 plaintiff appeared in court with his attorney, Robert C. Nelson of Cedar Rapids, and a plea of not

guilty was entered. Mr. Nelson was employed by plaintiff's father. He is an experienced attorney whom the father has previously consulted on other matters. Plaintiff was then returned to the county jail where he remained until October 1.

On this latter date plaintiff and his attorney again appeared in court, his plea of not guilty was withdrawn, a plea of guilty was entered, he was sentenced to a term not exceeding ten years in the men's reformatory but was granted a bench parole and placed under the supervision of the State Board of Parole.

On April 14, 1965, the bench parole was revoked and plaintiff was confined to the reformatory. This action in habeas corpus was commenced September 30, 1965. Evidence was heard on October 15 and 29 and the writ was annulled on November 5.

Plaintiff testified his attorney withdrew his former plea of not guilty and entered the guilty plea on October 1 as a surprise to him and he then objected to the entry of the plea but the judge paid no attention to him. Mr. Nelson's testimony is that before October 1 he had conferred with plaintiff's father and mother, the county attorney and the Herolds' minister, Reverend Patton; they intended to finally dispose of the case on that date; the judge asked if plaintiff desired to change his plea; the attorney answered that plaintiff wished to enter a guilty plea; the judge asked plaintiff on two or three occasions if that was in fact the plea he wished to make and plaintiff replied in the affirmative; the attorney had no indication whatsoever the plea was not voluntary by plaintiff; he heard no objection to it by plaintiff; while he had no definite recollection of seeing plaintiff at the jail he was reasonably sure he had visited with him there.

Plaintiff's father testified that when the attorney entered the guilty plea the son did object to it but he, the witness, was too far away to understand what was said; the county attorney recommended to the judge a year term in the county jail with half of it suspended; this was a surprise as they expected the county attorney to ask for the maximum sentence; Mr. Nelson told the judge plaintiff should have a ten-year sentence with

a bench parole from it; the witness understood Mr. Nelson was going to ask for such a sentence with parole since it would do plaintiff much more good; he, the father, did not know whether Nelson had contacted plaintiff about this but thought he had; he had visited his son in jail once a week but did not talk about changing the plea to guilty; he "figured" his son would probably plead guilty; he could not recall hearing the judge ask plaintiff if he desired to plead guilty.

Plaintiff's mother corroborated her husband as to their surprise at hearing the county attorney recommend to the judge a jail sentence with a parole from half of it as they expected him to ask for a ten-year term with no parole; she heard plaintiff say something when the guilty plea was entered but she could not tell what it was; plaintiff never told her he intended to plead guilty prior to October 1; she thought he wanted a bench parole but did not know whether he knew a guilty plea went with it.

A young lady testified plaintiff wrote her about three times a week while he was in jail and told her he did not intend to plead guilty and did not mention an intent to do so.

An officer with the State Board of Parole said he was in court on October 1; when the judge asked plaintiff about his plea he saw plaintiff nod his head in the affirmative but did not hear him say anything; after the sentence was imposed and plaintiff placed on probation he signed a statement in his own writing which contained the words "I plead guilty." In rebuttal plaintiff denied these words were written by him and said Mr. Nelson never visited him at the jail.

A man for whom plaintiff worked during most of the six and a half months he was out on parole testified plaintiff told him the guilty plea was not the one he wanted, he did not like his lawyer and that the judge was going to give him a year in jail but the lawyer wanted him to have a ten-year term on probation.

Plaintiff's father said in rebuttal plaintiff asked him several times to have the attorney visit him in jail and complained that the attorney did not do so; plaintiff would have liked another lawyer but the witness did not think it was necessary;

the witness had no reason to think Nelson was not representing plaintiff's best interests.

The Herolds' minister, called as a witness by the court, testified he met plaintiff at the jail on October 1 and walked with him to the courthouse; plaintiff told the witness he did not want to plead guilty; the witness told plaintiff he, Mr. Nelson and plaintiff's father had spent much time trying to get the county attorney to go along with a bench parole and the witness told plaintiff not to "mess it up" now; the witness could not remember the judge questioning plaintiff about the plea; plaintiff did not speak audibly about it; plaintiff's stance throughout the proceedings was sarcastic, as if he did not belong there and was not guilty; when the witness saw plaintiff at the jail on October 1 he was "mouthing off" and generally speaking about not being guilty as he always maintained; the guilty plea was entered because "we felt he was guilty" and the county attorney had sufficient evidence to convict; the witness was sure plaintiff did not want to plead guilty and "we convinced him" by telling him "we are getting you off"; the witness feared plaintiff would get in worse trouble by acting smart to the judge.

We have summarized the evidence at the hearing on plaintiff's petition perhaps more fully than necessary.

V. Section 777.12, Code, 1962, provides: "The plea of guilty can only be made in open court and by the defendant himself, and in the presence of legal counsel acting on behalf of the defendant if the defendant is charged with a felony in substantially the following form: 'The defendant pleads that he is guilty of the offense charged in the indictment', and shall be entered of record. * * *."

■ County attorneys and trial judges should see that this important provision is carefully followed and a record is made showing compliance with it. Evidently the statute was not literally followed here.

■ Nevertheless, especially under the testimony of Mr. Nelson and the parole officer which the trial court evidently believed, departure from the statutory procedure here does not amount to a denial of due process of law which entitles plain-

tiff to relief in habeas corpus. The testimony furnishes substantial support for a finding that when the judge asked if plaintiff (accused) desired to change his plea his attorney answered that plaintiff wished to enter a plea of guilty, the judge asked plaintiff two or three times if that was in fact the plea he wished to make and plaintiff replied in the affirmative, the attorney had no indication the plea was not voluntary by plaintiff and heard no objection to it.

It has been frequently held a plea of guilty in open court by defendant's counsel, in the presence of defendant who knew and understood what was being done and acquiesced in the plea, is not a violation of due process which entitles defendant to relief in a collateral proceeding such as habeas corpus. Plaintiff cites no authority to the contrary. State v. Woodson, 244 Iowa 1262, 1268, 59 N.W.2d 556, 559 (certiorari denied 347 U. S. 907, 74 S. Ct. 433, 98 L. Ed. 1065); United States v. Denniston, 2 Cir., N. Y., 89 F.2d 696, 698 (certiorari denied 301 U. S. 709, 57 S. Ct. 943, 81 L. Ed. 1362); United State v. Moe Liss, 2 Cir., 105 F.2d 144, 145; Mayes v. United States, 8 Cir., Ark., 177 F.2d 505, 507; Brown v. United States, 8 Cir., Mo., 182 F.2d 933, 934; Merritt v. Hunter, 10 Cir., Kan., 170 F.2d 739, 740; United States ex rel. Hairston v. Myers, D. C. Pa. (1965), 237 F. Supp. 472, 475, 476 (certiorari denied 381 U. S. 943, 85 S. Ct. 1781, 14 L. Ed.2d 706); State ex rel. Rajala v. Rigg, 257 Minn. 372, 101 N.W.2d 608; Cottrell v. Commonwealth, 187 Va. 351, 46 S.E.2d 413. See also Garland v. State of Washington, 232 U. S. 642, 34 S. Ct. 456, 58 L. Ed 772; Farrant v. Bennett, D. C., S. D. Iowa, 249 F. Supp. 549, 551; State v. Rinehart, 255 Iowa 1132, 1139, 125 N.W.2d 242, 246 ("The general rule is that the answer of counsel is binding on the accused." Citations).

Under very similar facts the Mayes case, supra, states: "* * * it can no longer be said that mere failure to comply with precise ceremonial or verbal formality in respect to arraignment and entry of a plea is a denial of due process [of law] for which conviction must be set aside."

Merritt v. Hunter, supra, holds, "Due process does not require that one charged with a criminal offense shall be called

upon to plead in his own behalf when he is represented by counsel who undertakes to act for him." Authorities are cited.

Under a Minnesota statute almost identical with the provision of our section 777.12 here pertinent State ex rel. Rajala v. Rigg, supra, reviews the applicable decisions and holds in a habeas corpus case due process does not require the accused to plead guilty personally when present in court at the time his counsel enters the plea.

Some of the precedents above cited, notably the first two, State v. Woodson and United States v. Denniston, involve direct appeals from conviction where the scope of review is much wider than in habeas corpus.

VI. Bearing in mind the burden rested on plaintiff to prove the plea was involuntary and the result of coercion and that our review is not de novo, we are not persuaded the trial court's contrary finding is error. The testimony of the attorney and parole officer which the court evidently believed is scarcely reconcilable with the claim the plea was involuntary. There is no evidence plaintiff did not understand the effect of the plea or that sentence would be pronounced thereon. Nothing is claimed for the fact sentence was pronounced on October 1 rather than later (see Code section 789.2).

There is no suggestion of any impropriety on the part of anyone connected with the prosecution. The advice plaintiff received from his attorney, his parents and the family minister was actuated by the best of motives and with what they believed was for plaintiff's welfare. It was not until five and one-half months after plaintiff's parole was revoked, which in turn was six and one-half months after sentence was pronounced, that action was taken challenging the plea of guilty. It seems reasonable to conclude the action would not have been taken at all if the parole had not been revoked. There is no claim the revocation was without good cause. Plaintiff's dislike for the attorney his father employed for him may also be due in part to his surprise and that of his parents at the county attorney's recommendation of only a jail sentence rather than the term in the reformatory as they anticipated.

Finally, the trial court may well have found it difficult to

believe plaintiff's testimony, in conflict with that of the attorney and parole officer, that he voiced objection to the sentencing judge at the plea of guilty but the judge paid no attention to him.—Affirmed.

All JUSTICES concur.