Certiorari Granted, November 13, 2017, No. S-1-SC-36669

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-090**

**Filing Date: August 24, 2017**

**Nos. A-1-CA-34190, A-1-CA-34191,
and A-1-CA-34192 (consolidated)**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**MILLARD DOYLE YANCEY,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark Terrence Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}**    This case requires us to determine what happens when a defendant enters into a plea agreement with the State but does not actually plead guilty. We conclude that in the absence of an express guilty plea on the record, a judgment and sentence that is entered pursuant to

the plea agreement is void, and that it must be vacated.

## I.      BACKGROUND

{2}      Three separate criminal complaints were filed against Defendant making the following allegations. Defendant was the bookkeeper for High Plains Refrigeration, Inc. and Duncan Farms, and paid the monthly payroll taxes to the Internal Revenue Service for both businesses. Representing that it would facilitate payment of the taxes, Defendant asked the businesses to make the checks payable to his bookkeeping firm. However, instead of paying the taxes, Defendant kept the money. Defendant was also the treasurer of the Lovington Men's Prayer Group, which met every week and collected donations from its members. As treasurer, Defendant was responsible for depositing the donations into the prayer group's bank account. Defendant did not deposit thousands of dollars into the account, and he also transferred funds from the prayer group account to his own account. We refer to these respectively as the High Plains, Duncan Farms, and Prayer Group cases.

{3}      Defendant was arrested three separate times. Defendant was first arrested on the Duncan case. While he was still in jail, a search warrant was executed at Defendant's office. After Defendant posted a $50,000 bond and was released in the Duncan case, Defendant was arrested a second time on the High Plains case, and Defendant was released after he posted an additional $100,000 bond. Defendant was arrested a third time, on the Prayer Group case, and he was released after posting a third bond in the amount of $20,000.

{4}      Defendant's rights to preliminary hearings in the magistrate court to determine if there was probable cause to believe Defendant committed the crimes set forth in the criminal complaints were waived when Defendant's attorney, Joy Pendleton, filed waivers in all three cases on the same day. Defendant thereby agreed that the State could proceed with the filing of a criminal information in the district court, and Defendant was bound over to the district court for trial.

**The Charges**

{5}      In the district court a criminal information was filed charging Defendant with fraud over $20,000, embezzlement over $20,000, and racketeering in the Duncan case, all of which are second degree felonies. Identical charges were filed in a separate criminal information in the High Plains case, and in the Prayer Group case, a third criminal information was filed charging Defendant with fraud over $2,500 and embezzlement over $2,500, both of which are third degree felonies. On Pendleton's advice, Defendant waived arraignment and entered a not guilty plea in all three cases.

**The Plea Agreements**

(6}      Defendant made a separate plea agreement in each case with a second attorney, Jon Fredlund. In the High Plains case, Defendant agreed to plead guilty to two second degree

2

felonies: fraud over $20,000, and embezzlement over $20,000, as charged in Counts 1 and 2 of the criminal information, with no agreement as to the sentence, and the State agreed to dismiss the racketeering count charged in Count 3. An identical agreement was made with respect to the charges contained in the criminal information in the Duncan case. In the Prayer Group case, Defendant agreed to plead guilty to the two third degree felonies charged in that criminal information: fraud over $2,500, and embezzlement over $2,500. Defendant's exposure for pleading guilty to four second degree felonies and two third degree felonies was significant. The basic sentence for a second degree felony is nine years, and a fine of $10,000, followed by two years of parole, and the basic sentence for a third degree felony is three years and a fine of $5,000, followed by two years of parole. In addition, in all three proposed plea agreements, Defendant agreed "to make restitution on all charges whether or not dismissed or not filed."

**The Plea Hearing**

{7}     A plea hearing was set for all three cases at the same time. Fredlund presented the proposed plea agreements to the district court, and after the district court administered the oath to Defendant and began the plea colloquy, it noticed that Defendant had not signed the plea agreements.Fredlund asked if the district court "wanted them signed before [it] goes through everything" and the district court replied that it did. Apparently pointing to where Defendant was to sign, Fredlund told Defendant, "by signing here, you're acknowledging that you understand the charges you're pleading to, the range of sentencing, the maximum sentence, and the various constitutional rights that you're giving up by entering the plea." After less than a minute of silence the signed plea agreements were handed back to the district court, and the colloquy was restarted.

{8}     In the colloquy the district court did not explain the elements of the offenses to Defendant. Referring to the proposed plea agreement in the High Plains case, the district court only asked Defendant, "Do you understand the allegations in the criminal information?" and Defendant answered, "Yes sir." The district court then told Defendant the range of the sentences that could be imposed for the fraud and embezzlement charges in the proposed agreement. Next, the district court turned to the proposed plea agreement in the Duncan case and again asked Defendant, "Do you understand the allegations in the criminal information in that [Duncan] case?" and Defendant again answered, "Yes sir," which was followed by an explanation of the range of sentences that could be imposed. The same pattern was followed with the proposed plea agreement in the Prayer Group case. The district court inquired, "Do you understand the charges in connection with that court case?" to which Defendant responded, "Yes sir." The district court then told Defendant the possible range of sentences that could be imposed for the third degree felonies in that case.

{9}     The district court next explained to Defendant that under the plea agreements, Defendant would be giving up important constitutional rights with respect to all three cases. These would include the right to trial by jury, the right to an attorney, including an appointed attorney if Defendant could not afford an attorney, the right to confront and cross-examine

3

witnesses, the right to present evidence on his own behalf, including the right to compel the attendance of witnesses at a trial, and the right to remain silent, and to be presumed innocent until proven guilty beyond a reasonable doubt. The district court asked Defendant, "Is it your intention to give up all those important rights?" and Defendant answered, "Yes sir, it is." The district court then informed Defendant that under the proposed plea agreements, it could deviate from any sentence recommended by the State.

{10}     To address whether there was a factual basis for the proposed pleas, the district court first asked counsel, "Does there exist a basis of fact, Mr. Fredlund, for believing that your client is guilty of the charges in all cases?" and he responded, "There does, your Honor." Turning to Defendant, the district court then asked, "All right, and so, Mr. Yancey, do you acknowledge and agree that the State has some evidence to prove your guilt of all the charges in all three cases?" and Defendant answered, "Yes."

{11}     The district court asked Defendant if he understood the proposed plea agreements and consented to their terms, and Defendant said he did. The district court next asked Defendant, "Is your plea voluntary not the result of force, threats, or promises other than promises made in the plea agreements?" and Defendant answered, "Yes." When the district court next inquired of Fredlund if it was reasonable, under the circumstances, that Defendant would plead guilty, it was disclosed that there was another promise, that the Taxation and Revenue Department also agreed that it would not pursue additional charges against Defendant. There followed a short colloquy in which it was confirmed that Defendant is a United States citizen, but the district court nevertheless asked, and Defendant acknowledged that he knew the charges were deportable offenses. The district court concluded the colloquy by announcing:

> On the basis of these findings, then, I shall conclude that the Defendant has knowingly, voluntarily, and intelligently pled guilty . . . to the charges that remain in the three cases that are under consideration today. These findings will be made part of the record in this case—in each of the three cases. And so, I will approve the pleas.

The district court then signed the plea and disposition agreements, approving them. The district court asked if the parties were ready to proceed to sentencing, and was informed that there was an agreement to request a pre-sentence report. The district court ordered a pre-sentence report and the hearing was adjourned.

**The Sentences**

{12}     Sentence was imposed in all three cases in a single hearing. The probation officer who prepared the pre-sentence report and the district attorney both recommended a sentence of twelve years. After hearing statements from the victims, family and friends of Defendant, Fredlund, and Defendant, the district court sentenced Defendant to be incarcerated for a total of twenty-one years. In the High Plains case, Defendant was sentenced to two concurrent

4

nine year terms on the second degree felony fraud and embezzlement charges, to be followed by two years of parole. An identical sentence was imposed for the two second degree felony fraud and embezzlement charges in the Duncan case, which were to be served consecutive to the sentence in the High Plains case. Finally, Defendant was sentenced to concurrent three year terms for the two third degree felony fraud and embezzlement charges in the Prayer Group case, followed by one year of parole, to be served consecutive to the sentences in the High Plains and Duncan cases.

**The Motions to Withdraw Pleas and Motion to Reconsider Sentence**

**{13}** Defendant filed a motion to withdraw his plea in each case, asserting that the pleas were not knowing, voluntary, and intelligent. Defendant also filed a motion to reconsider the sentence in each case. The latter motions pointed out that Defendant was seventy-one years old, and in declining health. Defendant asserted that for all practical purposes, the twenty-one year sentence, which deviated from the recommendation of the probation officer and the State, amounted to a life sentence.

**{14}** The district court denied the motions to withdraw the guilty pleas, ruling that Defendant had said he understood the factual basis and possible sentences in the plea colloquy and signed the plea agreements, which said there was no agreement on the sentence. The motion to reconsider the sentence was also denied. Amended orders denying the motions were filed in each case, and Defendant appeals.

## II.     ISSUE ON APPEAL

**{15}** Defendant argues that the district court abused its discretion by denying Defendant's motion to withdraw his guilty pleas, because in accepting the pleas, the district court did not adequately inform Defendant of the nature of the charges to which the pleas were offered, the district court did not make a sufficient inquiry on whether there was a factual basis for the pleas, and the district court did not inform Defendant of the maximum possible penalty resulting from the pleas. In addition, for the first time on appeal, Defendant argues that his pleas were not knowing, intelligent, and voluntary because Defendant's pleas were the result of ineffective assistance of counsel.

**{16}** We are, however, compelled to address a more fundamental and serious issue which was not raised. In our review of the plea hearing record on appeal, we noted a glaring omission: Defendant never was asked to, nor did he ever, expressly plead guilty in open court to any crime on the record. We therefore submitted a draft opinion to the parties, proposing to reverse the convictions and to remand all three cases to the district court with instructions to vacate the judgments and sentences. We also requested that the parties submit simultaneous briefs responding to the proposed opinion. We have received the parties' responses, and remain persuaded that our proposed disposition is correct.

**{17}** The issue before us is whether the district court had jurisdiction to enter judgments

5

finding Defendant guilty and impose prison sentences when Defendant never actually entered a guilty plea to any charge in any of the cases. *See State v. Tafoya*, 2010-NMSC-019, ¶ 7, 148 N.M. 391, 237 P.3d 693 ("[A] court's sentencing power properly is considered part of its subject matter jurisdiction."); *State v. Trujillo*, 2007-NMSC-017, ¶ 8, 141 N.M. 451, 157 P.3d 16 ("Because a trial court does not have subject-matter jurisdiction to impose a sentence that is illegal, the legality of a sentence need not be raised in the trial court."). Moreover, we are obligated to address jurisdictional issues on our own motion when they come to our attention. *See State v. Favela*, 2013-NMCA-102, ¶ 6, 311 P.3d 1213 ("The question of jurisdiction is a controlling consideration that must be resolved before going further in a proceeding and may even be raised by the appellate court on its own motion." (internal quotation marks and citation omitted)), *aff'd*, 2015-NMSC-005, 343 P.3d 178; *see also Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300 ("[I]t is incumbent upon the appellate court to raise jurisdiction questions sua sponte when the Court notices them.").

## III.   DISCUSSION

### Standard of Review

**{18}**   "We review jurisdictional issues de novo." *Favela*, 2013-NMCA-102, ¶ 6. Moreover, analysis of the jurisdictional issue before us requires us to construe applicable statutes and rules of criminal procedure, and ultimately, to determine whether Defendant's adjudications and incarceration comply with the United States and New Mexico Constitutions. Our review of the issue presented is therefore de novo. *See State v. Rapchack*, 2011-NMCA-116, ¶ 8, 150 N.M. 716, 265 P.3d 1289 (stating that the meaning of a statute "is a question of statutory interpretation which we review de novo"); *State v. Miller*, 2008-NMCA-048, ¶ 11, 143 N.M. 777, 182 P.3d 158 (stating that in construing and determining the proper application of procedural rules adopted by our Supreme Court, "our review is de novo"); *State v. Isaac M.*, 2001-NMCA-088, ¶ 4, 131 N.M. 235, 34 P.3d 624 (stating that when we are required to "interpret constitutional and statutory provisions, our standard of review is de novo").

### Analysis

**{19}**   New Mexico law defines a crime as "an act or omission forbidden by law and for which, upon conviction, a sentence of either death, imprisonment or a fine is authorized." NMSA 1978, § 30-1-4 (1963).[1] A conviction is a factual finding that the defendant committed a crime—that the defendant is guilty. *See State v. Garcia*, 1983-NMCA-017, ¶ 26, 99 N.M. 466, 659 P.2d 918 ("A conviction refers to a finding of guilt and does not include the imposition of sentence."). A finding that the defendant is guilty is determined either in a trial or by a plea. "A conviction may be entered when the defendant is found

---

[1]New Mexico no longer has a death penalty. 2009 N.M. Laws, ch. 11, §§ 1 to 7 (abolishing the death penalty for all crimes committed on or after July 1, 2009).

6

guilty of a criminal charge by verdict of the jury, upon the defendant's confession of guilt or a plea of nolo contendere, or after trial to the court without a jury followed by a finding by the court that the defendant is guilty of the crime for which he is charged." *Id.*; *see State v. Larranaga*, 1967-NMSC-047, ¶ 7, 77 N.M. 528, 424 P.2d 804 (approving the definition of " '[c]onvicted' " as " 'the establishing of guilt whether by [an] accused's admission in open court by plea of guilty to the charges presented, or by a verdict or finding of a court or jury' ") (quoting *State v. O'Dell*, 225 P.2d 1020, 1022 (1950); *see also Henderson v. Morgan*, 426 U.S. 637, 647-48 (1976) ("There are essentially two ways under our system of criminal justice in which the factual guilt of a defendant may be established such that he may be deprived of his liberty consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The first is by a verdict of a jury which, or a decision [of] a judge who, concludes after trial that the elements of the crime have been proved beyond a reasonable doubt. The second is by the defendant's own solemn admission in open court that he is in fact guilty of the offense with which he is charged[.]" (White, J., concurring) (internal quotation marks and citation omitted)). In other words, a conviction requires an adjudication of guilt—that is, a factual determination made in a judicial proceeding that the defendant committed acts prohibited by the criminal law.

**{20}**    In our adversarial system of criminal justice the full power of the government is available to the state to accuse a person of committing a crime, to convict that person, and ultimately, punish that person with a prison term. As a check on that awesome power, our constitutional democracy dictates that a conviction can only result after a trial when procedural and substantive rights secured and safeguarded by the United States and New Mexico Constitutions are strictly observed and complied with. For example, and without limitation, a person accused of committing a crime has constitutional rights to be informed of the nature and cause of the accusation; the right to plead not guilty, and to persist in that plea; to have the assistance of an attorney; to a speedy and public trial; to confront and cross-examine the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have an impartial jury decide the facts of the case; to remain silent; and to be presumed innocent until proven guilty beyond a reasonable doubt. *See* U. S. Const. amends. V-VI; N.M. Const. art. II, §§ 14-15, 18. In addition, a defendant has a right to raise all available legal defenses, and to object to the admission of evidence obtained in violation of state and federal constitutional requirements.

**{21}**    All this changes, however, with a guilty plea. A guilty plea "is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so. . . . But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge." *Brady v. United States*, 397 U.S. 742, 748 (1970); *State v. Daniels*, 1968-NMSC-039, ¶ 6, 78 N.M. 768, 438 P.2d 512 (stating that "when a plea of guilty is made and accepted nothing remains for a jury to consider"). In addition, by pleading guilty, a defendant waives the constitutional rights that a defendant is entitled to in a criminal trial. *See Florida v. Nixon*, 543 U.S. 175, 187 (Fla. 2004).

7

Constitutional rights which are waived include the privilege against compulsory self-incrimination, the right to confront one's accusers, and the right to a jury trial. *See Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *State v. Hodge*, 1994-NMSC-087, ¶ 14, 118 N.M. 410, 882 P.2d 1 (recognizing that a valid guilty plea "waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights").

**{22}** For the foregoing reasons, it has long been a constitutional requirement that "courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." *Kercheval v. United States*, 274 U.S. 220, 223 (1927). This means that there must be "an affirmative showing that [the guilty plea] was intelligent and voluntary[,]" and that the defendant understood the nature of the charges against him or her and the relationship of the law to the facts. *Boykin*, 395 U.S. at 242, 243 n.5. A valid guilty plea "requires the accused has been informed of the nature of the charges, acts sufficient to constitute the offense, the right to plead 'not guilty,' the right to a jury trial, the right to counsel, and the permissible range of sentences." *State v. Garcia*, 1996-NMSC-013, ¶ 9, 121 N.M. 544, 915 P.2d 300 (internal quotation marks and citation omitted). Finally, because the waiver of a defendant's constitutional rights cannot be presumed "from a silent record[,]" these requirements must affirmatively appear on the record at the time the guilty plea is made. *Boykin*, 395 U.S. at 243. A "record of other proceedings occurring either before or after the taking of the plea, such as a sentencing hearing or a hearing on a motion to withdraw the plea" is not sufficient. *State v. Martinez*, 2002-NMSC-008, ¶ 77, 132 N.M. 32, 43 P.3d 1042 (citation omitted). In summary, "there must be a showing on the record that the plea was voluntarily, knowingly, and intelligently made." *Marquez v. Hatch*, 2009-NMSC-040, ¶ 6, 146 N.M. 556, 212 P.3d 1110.

**{23}** It is also a constitutional requirement that the defendant must actually admit he is guilty in open court on the record because it entails a decision of whether to exercise or waive basic constitutional trial rights. "A defendant, this Court affirmed, has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Nixon*, 543 U.S. at 187 (internal quotation marks and citation omitted). Thus, the defendant's attorney "lacks authority to consent to a guilty plea on [the defendant's] behalf[;] moreover, a defendant's tacit acquiescence in the decision to plead is insufficient to render the plea valid[.]" *Id.* at 187-88 (citations omitted).

**{24}** The State's response "concedes" that "the ceremonial exchange between the district court [asking Defendant how he pleads] and Defendant [answering "guilty"] did not take place." The State, however, contends that because Defendant: signed the plea agreement in open court; admitted that the State possessed some evidence of his guilt on all the charges; expressed his consent to the terms of the plea agreement; and acknowledged that he was voluntarily entering a plea of guilty, Defendant actually pleaded guilty, and that the "absence of a ceremonial exchange" does not render the Defendant's convictions invalid. We reject both contentions.

**{25}** Our Rules of Criminal Procedure for the District Courts clearly set forth what is

8

required *before* a guilty plea may be accepted. First, Rule 5-304(B) NMRA requires that when a plea agreement has been reached which contemplates the entry of a guilty plea, "it shall be reduced to writing substantially in the form approved by [our] Supreme Court. The [trial] court shall require the disclosure of the agreement in open court at the time the plea is offered and shall advise the defendant as required by Paragraph F of Rule 5-303 NMRA." That was done here. However, none of the plea agreements can even be remotely construed as a guilty plea. In each case, the plea agreement only recites that Defendant "agrees to plead guilty." We also reject the argument that Defendant pleaded guilty because he admitted that the State possessed some evidence of his guilt on all the charges; expressed his consent to the terms of the plea agreement; and acknowledged that he was voluntarily entering a plea of guilty, as required by the Rules of Criminal Procedure for the District Court *before* a guilty plea can be accepted.

**{26}** When a guilty plea is contemplated, Rule 5-303(F) sets forth what advice the district court must personally give to a defendant in open court as follows:

> The court *shall not accept a plea of guilty* or no contest *without first*, by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands the following:
> (1) the nature of the *charge to which the plea is offered*;
> (2) the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law for the offense *to which the plea is offered*, including any possible sentence enhancements;
> (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made;
> (4) that *if the defendant pleads guilty* or no contest there will not be a further trial of any kind, so that by pleading guilty or no contest the defendant waives the right to a trial;
> (5) that, *if the defendant pleads guilty* or no contest, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea;
> (6) that, if the defendant is charged with a crime of domestic violence or a felony, *a plea of guilty* or no contest *will affect* the defendant's constitutional right to bear arms, including shipping, receiving, possessing or owning any firearm or ammunition, all of which are crimes punishable under federal law for a person convicted of domestic violence or a felony; and
> (7) that, *if the defendant pleads guilty* or no contest to a crime for which registration as a sex offender is or may be required, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the registration requirement under the Sex Offender Registration and Notification Act.

9

(Emphasis added.) Another prerequisite is ensuring that the proposed plea is voluntary: "The court *shall not accept a plea of guilty* or no contest *without first*, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement." Rule 5-303(G) (emphasis added). Finally, the district court is required to determine that there is a factual basis for a guilty plea. *See* Rule 5-304(G) ("Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.").

**{27}** We reject the State's argument that compliance with the foregoing prerequisites set forth in Rules 5-303 and 5-304 results in an actual guilty plea. These prerequisites must be complied with *before* a guilty plea can be entered. A defendant is always entitled to change his mind right up to the point that he is asked to plead. In fact, Rule 5-303(F)(3) requires the district court, *before* accepting a guilty plea, to advise the defendant that he has a right to persist in a not guilty plea if it has already been made. Instances in which a defendant has changed his or her mind after entering into a guilty plea, or during the plea colloquy itself are well known. *See State v. Amanza*, 2007-NMCA-073, ¶ 2, 141 N.M. 751, 160 P.3d 932 (noting that after the parties had negotiated a plea agreement to be presented to the trial court, the defendant changed his mind); *Commonwealth v. Kidd*, No. 3477-2009, 2010 WL 2510980 (Pa. Com. Pl. 2010) (noting that after receiving a full plea colloquy the defendant said he wanted to re-evaluate his situation to withdraw his proposed guilty plea); *People v.Cocuzza*, 318 N.W.2d 465, 465 (Mich. 1982) (noting that during the plea hearing the defendant changed his mind about pleading guilty); *Banks v. United States*, 262 A.2d 110, 110-11 (D.C. 1970) (noting that during the guilty plea hearing it became apparent that the defendant did not desire to confess his guilt, and a trial date was set). The district court here attempted compliance with the first step, but omitted the second, which was for Defendant to actually state his admission of guilt in open court and plead guilty on the record. In other words, insuring that a proposed guilty plea will be voluntary and intelligent does not equate to an affirmative admission of guilt made in open court on the record.

**{28}** The State also argues that the "*mere* failure to comply with [the] precise ceremonial or verbal formality in respect to the arraignment and entry of plea should not amount to denial of due process for which a conviction can be set aside." In support of its argument, the State refers us to *Crain v. United States*, 162 U.S. 625 (1896), *overruled in part by Garland v. State of Washington*, 232 U.S. 642 (1914). However, as discussed below, we conclude that the State means to rely on *Garland,* which overruled *Crain.* The State also cites to *Mayes v. United States*, 177 F.2d 505 (8th Cir. 1949); *Herold v. Haugh*, 145 N.W.2d 657 (Iowa 1966); *Parrott v. Haugh*, 158 N.W.2d 766 (Iowa 1968); and *State v. Straley*, No. 09CA4, Slip op., 2009 WL 4021379, 2009-OHIO-6170 (non-precedential), in support of its argument. We conclude these cases do not support a finding that Defendant entered a guilty plea here.

**{29}** In *Crain*, a jury was selected, impaneled, and sworn, and following a trial, found the defendant guilty of the offenses charged in the indictment. 162 U.S. at 632-33. The

defendant's motion to set aside the verdict on grounds that the record failed to show he was ever formally arraigned, or that he pleaded to the indictment was denied. *Id.* at 636-37. Referring to several earlier English authorities and state court cases with approval, *id.* at 637-43, the United States Supreme Court held the "prevailing rule" in felony cases to be that, "a plea to the indictment is necessary before the trial can be properly commenced, and that, unless this fact appears affirmatively from the record, the judgment cannot be sustained. Until the accused pleads to the indictment, and thereby indicates the issue submitted by him for trial, there is nothing for the jury to try[.]" *Id.* at 643. *Crain* clearly offers no support to the State here.

{30}     In *Garland*, an information filed in a Washington state court charged the defendant with larceny, to which a not guilty plea was entered. 232 U.S. at 643. A new trial was granted, and a second information was filed making the identical charge. *Id.* at 643-644. There was no arraignment or plea on the second information. *Id.* A jury again found the defendant guilty, and the defendant argued for the first time on appeal before the Washington Supreme Court that he was entitled to a new trial because he had not entered a not guilty plea to the second information. *Id.* at 644. The Washington Supreme Court rejected the defendant's argument and affirmed the defendant's conviction. *Id.* In the United States Supreme Court the defendant argued that *Cain* required the conviction to be set aside. *Garland*, 232 U.S. at 645. The Supreme Court noted that the defendant had received the due process he was entitled to in that he had sufficient notice of the charge and an adequate opportunity to defend, and "it cannot for a moment be maintained that the want of a formal arraignment deprived the [defendant] of any substantial right, or in any wise changed the course of trial to his disadvantage." *Id.* Under the circumstances, the Court said, the defendant was attempting "to gain a new trial for want of compliance with what in this case could have been no more than a mere formality." *Id.* The Court further observed that *Crain* had relied on reasoning and authorities that were no longer required in the administration of criminal justice, and it overruled *Crain*. *Garland*, 232 U.S. at 646-47.

{31}     *Mayes* is a case in which the defendant argued error in denying his motions to vacate judgments and sentences of imprisonment, contending that he never pleaded guilty. 177 F.2d at 506. The record showed that the defendant, his attorney, and the prosecutor stood before the trial court, and the prosecutor announced, "we would like to dispose of these cases." *Id.* (internal quotation marks omitted).The trial court thereupon called upon an F.B.I. agent for his report concerning his investigations of the defendant. *Id.* at 506-507. The agent "stated specifically and in detail" what the defendant was charged with, and when the agent finished, the defendant's attorney told the court, "I have talked with this defendant and he wishes to enter a plea of guilty." *Id.* at 507 (internal quotation marks omitted). The trial court asked the defendant if he wanted to make a statement, and the defendant responded, "No, Sir." *Id.* (internal quotation marks omitted). The trial court then said, "You have heard the charges. They are correct?" and the defendant answered, "Yes, Sir." *Id.* (internal quotation marks omitted). The court held that the defendant's "yes" response when asked if the charges were correct, "had no fair meaning other than that he admitted the charges were true." *Id.* The court added, "The admission of guilt when called upon by the court to answer to the charges

11

is all that a plea of guilty on arraignment amounts to, and when [the defendant] was called upon and he made his answer his plea was complete." *Id.* Referring to *Garland's* overruling of *Crain*, the court declared, "it can no longer be said that mere failure to comply with precise ceremonial or verbal formality in respect to arraignment and entry of a plea is a denial of due process for which conviction must be set aside." *Mayes*, 177 F.2d at 507.

**{32}** *Herold* was a habeas corpus case. Denying habeas corpus relief, the lower court found that when the judge in the criminal case asked the defendant if he wanted to change his plea from not guilty to guilty, his attorney answered that the defendant wished to enter a guilty plea, and the judge asked the defendant two or three times if that was in fact the plea he wished to make, to which the defendant replied in the affirmative. 145 N.W.2d at 673. Iowa's statute directed that a guilty plea could only be made in open court by the defendant himself in the presence of counsel, substantially in the following form: "The defendant pleads that he is guilty of the offense charged in the indictment[.]" *Id.* at 672 (internal quotation marks and citation omitted). The Iowa Supreme Court concluded that the departure from the statutory procedure did not amount to a denial of due process which entitled the defendant to habeas corpus relief. *Id.* at 672-73. The court first followed *Mayes* in concluding that departure from the strict statutory procedure did not automatically result in a denial of due process. *Herold*, 145 N.W.2d at 673. In addition, the court followed cases which allow counsel to plead guilty on behalf of a defendant who was present, understood what was being done, and acquiesced in the plea. *Id.* at 673-74. These authorities are at the very least questionable today. *See Nixon*, 543 U.S. at 187-88 ("[C]ounsel lacks authority to consent to a guilty plea on a client's behalf[;] moreover, a defendant's tacit acquiescence in the decision to plead is insufficient to render the plea valid[.]" (citations omitted)).

**{33}** The Iowa Supreme Court again construed its statute in *Parrott*, another case in which a defendant was denied habeas corpus relief. The defendant testified that he voluntarily signed a written plea of guilty in the presence of his counsel, that "he read the plea and understood he waived his rights to a 'regular trial.'" 158 N.W.2d at 770. The defendant later appeared in open court before the judge in the criminal case with his attorney, "acknowledged he signed the written plea of guilty of his own free will and that he understood it." *Id.* The Iowa Supreme Court concluded that "Such an acknowledgment in open court in the presence of his attorney is tantamount to an open court plea as required [by the statute]" and referring to its opinion in *Herold*, the court added, "Minor deviations from statutory procedure do not amount to a denial of due process entitling [the defendant] to relief in a collateral proceeding such as habeas corpus." *Parrott*, 158 N.W.2d at 770.

**{34}** Finally, the State refers us to the memorandum opinion of the Ohio Court of Appeals in *Straley*, 2009-OHIO-6170. In this case, the defendant was charged in a fourteen count indictment. *Id.* ¶ 2. In connection with a plea agreement, the defendant signed a "Plea of Guilty" which recited in part, "I withdraw my former not guilty plea and enter a plea of guilty to the following offense(s)" and the defendant pleaded guilty to eight counts of a fourteen count indictment. *Id.* ¶ 4 (internal quotation marks omitted). The defendant's attorney also signed the "Plea of Guilty." *Id.* (internal quotation marks omitted). At the plea

and sentencing hearing at which the defendant subsequently entered oral guilty pleas, the trial court inadvertently skipped one of the counts, and the defendant argued on appeal that the trial court erred in finding him guilty on that count, contending he did not actually plead guilty to that count. *Id.* ¶¶ 9-10. The appellate court first noted that Ohio's rule did not require a defendant to orally plead guilty because the rule proves that "[a]ll other pleas [other than a plea of not guilty by reason of insanity] *may* be made orally." *Id.* ¶ 11 (internal quotation marks and citation omitted). Furthermore, because the trial court complied with the requirements for insuring a valid guilty plea before it accepted the defendant's written plea agreement, the court concluded that the trial court had authority to accept the defendant's written guilty pleas and convict the defendant on all eight counts. *Id.* ¶¶ 18-21.

**{35}** To summarize, *Crain* and *Garland* are clearly inapplicable, as they address whether a court has jurisdiction to try a criminal case in the absence of a 'not guilty' plea during preliminary proceedings. *Mayes* is distinguishable to the facts before us here. In *Mayes*, the prosecutor, defense counsel, and the defendant appeared before the court stating they wanted to dispose of the cases. The charges having been described in detail by the F.B.I. agent, defense counsel stated that the defendant wished to plead guilty. The court asked the defendant, whether the charges as described were true, and the defendant admitted that they were. Unlike the defendant in *Mayes*, Defendant was never asked to admit his guilt to any charge. Defendant was only asked if the State had "some evidence" to prove all the charges to satisfy the district court if there was a factual basis for a plea which never occurred. In *Herold*, in contrast to the case here, the defendant said he wished to make a guilty plea in response to multiple questions from the court. Finally, *Parrott* and *Straley* clearly do not assist the State here because the defendants in those cases, with the assistance of counsel, signed written guilty pleas as opposed to an agreement to plead guilty at a later time.

**{36}** We reject the suggestion that actually admitting guilt in open court on the record is a mere ceremonial or verbal formality. When a defendant pleads guilty, a criminal case makes a pivotal and decisive turning point, assuming an entirely new character. It is a critical moment. With full knowledge, the defendant makes a voluntary and binding choice to strip himself of his constitutional rights and defenses, and agrees to be punished as provided by law. The guilty plea is final and conclusive. For this reason the fundamental requirement is that the defendant actually make an admission of guilt in open court on the record, or there is no guilty plea. This is recognized by our Rules of Criminal Procedure for the District Courts. Rule 5-303(H) states: "A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty or no contest, the record shall include, without limitation, the court's advice to the defendant [as required by Rule 5-303(F)], the inquiry into the voluntariness of the plea including any plea agreement [as required by Rule 5-303(G)], and the inquiry into the accuracy of a guilty plea [as required by Rule 5-303(G)]." Here, a verbatim recording was made of the hearing to present the plea agreements to the district court and for the district court to conduct the colloquy required to accept Defendant's proposed guilty pleas. However, the district court never specifically asked Defendant to plead, and he never expressly admitted his guilt to anything in open court on the record in the hearing.

13

**{37}** NMSA 1978, § 30-1-11 (1963) clearly declares:

> No person indicted or charged by information or complaint of any crime shall be sentenced therefor, unless he has been legally convicted of the crime in a court having competent jurisdiction of the cause and of the person. No person shall be convicted of a crime unless found guilty by the verdict of the jury, accepted and recorded by the court; or upon the defendant's confession of guilt or a plea of nolo contendere, accepted and recorded in open court; or after trial to the court without jury and the finding by the court that such defendant is guilty of the crime for which he is charged.

Because Defendant did not confess his guilt in open court by actually pleading guilty on the record in open court, there is no legal conviction, and the district court had no authority to order Defendant to serve the twenty-one year penitentiary sentence. The judgment and sentence filed in the High Plains, Duncan Farms, and Prayer Group cases are each void. " 'A trial court's power to sentence is derived exclusively from statute.' " *Rapchack*, 2011-NMCA-116, ¶ 8 (quoting *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064), and "[a] sentence or portion thereof that is unauthorized by law is null and void." *State v. Pando*, 1996-NMCA-078, ¶ 14, 122 N.M. 167, 921 P.2d 1285; *see Sneed v. Cox*, 1964-NMSC-250, ¶ 8, 74 N.M. 659, 397 P.2d 308 ("We have recognized that sentences which are unauthorized by law are null and void.").

## IV.    CONCLUSION

**{38}**    The convictions in each case are reversed and all three cases are remanded to the district court with instructions to vacate the judgment and sentence entered therein.

**{39}    IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**I CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

**M. MONICA ZAMORA, Judge (dissenting).**

**ZAMORA, Judge, (dissenting).**

**{40}**    "[A] voluntary guilty plea ordinarily constitutes a waiver of the defendant's right to appeal his conviction on other than jurisdictional grounds." *State v. Chavarria*, 2009-NMSC-020, ¶ 9, 146 N.M. 251, 208 P.3d 896 (internal quotation marks and citation omitted). In this

case, it is the Majority that has introduced and developed the jurisdictional issue. Requiring Defendant to verbally state on the record "I plead guilty" is only one consideration of many in making this determination and by itself does not create jurisdictional grounds justifying an automatic reversal of the district court's order denying Defendant's motion to withdraw his pleas. For these reasons, I respectfully dissent.

**{41}**     It is a general rule that this Court does not consider an issue that was not raised below or raised by the parties on appeal. *See State v. Am. Fed'n of State, Cty., & Mun. Emps. Council 18*, 2012-NMCA-114, ¶ 35, 291 P.3d 600 ("[I]t would be unfair to the parties for us, sua sponte, to conceive of and articulate legal theories that never occurred to the parties and that were not raised in the proceedings below or on appeal. . . . [C]ourts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailored the case to fit within their legal theories." (internal quotation marks and citation omitted)). Nonetheless and appropriately so, the parties were given the opportunity to be heard on the Majority's proposed opinion.

**{42}**     Defendant, a former certified public accountant, and the State entered into separate plea agreements, in each of the three cases. There are far-reaching consequences for both the State and Defendant in entering into these plea agreements. "A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and approved by the trial court." *State v. Mares*, 1994-NMSC-123, ¶ 12, 119 N.M. 48, 888 P.2d 930. The parties are free "to negotiate the terms of a plea agreement to the full extent allowed by law." *Id.* ¶ 11. As a result, both parties make concessions and gain advantages during these negotiations. *See State v. Trujillo*, 1994-NMSC-066,¶ 14, 117 N.M. 769, 877 P.2d 575. When a defendant seeks to withdraw his plea, he is also seeking to give up any benefits he received as part of those negotiations. *See State v. Gibson*, 1981-NMCA-099, ¶ 10, 96 N.M. 742, 634 P.2d 1294 (holding that a defendant "may not be relieved of a part of his plea . . . without giving up benefits he received in the bargain"). "Upon review, [appellate courts] construe the terms of the plea agreement according to what [the d]efendant reasonably understood when he entered the plea." *State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954 (internal quotation marks and citation omitted); *accord Mares*, 1994-NMSC-123, ¶ 12 ("In reviewing and interpreting the agreement a court should construe the terms according to what [the defendant] reasonably understood when he entered his plea." (alteration, internal quotation marks and citation omitted)).

**{43}**     The overriding question when considering the withdrawal of a plea is whether Defendant knowingly and voluntarily entered into a plea agreement, with negotiated terms and conditions, that he accepted. *See State v. Robbins*, 1967-NMSC-091, ¶ 19, 77 N.M. 644, 427 P.2d 10 ("[W]hen a plea of guilty is made voluntarily after proper advice of counsel and with a full understanding of the consequences, the plea is binding."). Our New Mexico Supreme Court has recognized that Rule 5-303 essentially codifies the United States Supreme Court mandate expressed in *Boykin* and followed by New Mexico courts requiring an affirmative showing on the record that the requirements for a voluntary guilty plea have

been met. *See Boykin*, 395 U.S. at 242; *Garcia*, 1996-NMSC-013, ¶¶ 9-10. Thus, the underlying purpose of the rule is to ensure that a defendant's plea is both knowing and voluntary. As a component of that overriding question, the Majority has included the consideration of whether Defendant's failure to verbally plead guilty to each of the charges in all three cases negatively impacts the fundamental fairness of the proceedings against him, such that an automatic reversal of his convictions is the only relief.

**{44}** Our Supreme Court has held that "absent a showing of prejudice to the defendant's right to understand his guilty plea and its consequences, substantial compliance with Rule 5-303(E)[2] is sufficient." *Garcia*, 1996-NMSC-013, ¶ 12. "Although the court must be certain that the plea is knowing and voluntary, it is more reasonable to require substantial compliance rather than to require the trial courts to strictly adhere to a script." *Id.*

**{45}** Because the facts and circumstances of each case are different, it is necessary when we are considering whether there was substantial compliance with Rule 5-303, that we do so on a case-by-case basis. *See id.* (reviewing the unique facts of each case). Implicit in the case-by-case approach is the fact that there cannot be a general inflexible script for the district court to follow. *See id.* (recognizing the trial court is not required to be "bound to a strict[,] unvarying formula of words." (alteration, internal quotation marks, and citation omitted)).

**{46}** Under oath, Defendant confirmed to the district court that he understood the allegations in the criminal information for all three cases. *See* Rule 5-303(F)(1). Defendant also stated to the district court that he understood the possible ranges of sentences and fines for each of the charges in each of the three cases. *See* Rule 5-303(F)(2). The district court also noted that the State would dismiss Count 3, in both the High Plains case and the Duncan case. The district court informed Defendant of the constitutional rights he would be giving up by entering into a plea. *See* Rule 5-303(F)(4). Defendant agreed that it was his intention to give up those constitutional rights. *See* Rule 5-303. Defense counsel agreed that there was a factual basis to believe Defendant was guilty of the charges and Defendant agreed that the State had some evidence to prove the charges in all three cases. *See* Rule 5-304(G) (stating that a court shall make such inquiry as shall satisfy it that there is a factual basis for the plea). Defendant also stated that he understood the plea agreement and consented to its terms. *See* Rule 5-303(G). Although Defendant stated he was a United States citizen, the district court still counseled him on the possible immigration consequences. Rule 5-303(F)(5). The district court specifically asked Defendant if his plea was voluntary and not the result of force, threats, or promises. Defendant stated it was voluntary. *See* Rule 5-303(G). The State informed the district court of an agreement with the Taxation and Revenue

---

[2]Rule 5-303 was amended effective December 10, 2007, whereby subparagraph E was re-lettered as Subparagraph F and adding additional matters within that subparagraph for the district court to review with a defendant prior to accepting their plea of guilty or no contest.

Department, Fraud Division (the Department), that if Defendant pled guilty in the three cases, the Department would not pursue additional charges that are unrelated to the cases. The State also informed the district court that it would let the Department know that Defendant had entered into the plea. Defendant requested a pre-sentence report and the State agreed. Defendant affirmed that he understood that the district court may or may not impose the sentence recommended. *See* Rule 5-304(B) (stating that such recommendations are not binding on the court). Before adjourning, the district court asked the parties if there was anything further and neither party had any further business before the district court.

**{47}** Each plea agreement begins with "The State of New Mexico and . . . [D]efendant hereby agree to the following disposition of this case[.]" Each plea agreement specifically states "[D]efendant agrees to plead guilty to. . ." and lists those offenses to which he is agreeing to plead guilty. Each of the plea agreements also specifically state, "There are no agreements as to sentencing." In addition to his attorney informing Defendant that by signing the plea agreements Defendant is acknowledging that he understands the charges to which he is pleading guilty to, and just above Defendant's signature it states that "I have read and understand the above." A verbatim record was made of the district court's advice to Defendant, its inquiry into the voluntariness of Defendant's pleas, including the plea agreement and its inquiry into the accuracy of the guilty plea. *See* Rule 5-303(H).

**{48}** The Majority is reading more into Rule 5-303, Rule 5-304, and Section 30-1-11 than what is there. Contrary to the Majority's assertion, there is no authority to support a mandatory requirement that a defendant verbally plead guilty on the record before the district court could accept the plea. Majority Op. ¶¶ 36-37. *See Daniels*, 1968-NMSC-039, ¶ 13 (stating that "[a d]efendant cannot be heard to complain since *by his plea he confessed* the charge contained in the information." (emphasis added)). Nowhere in either Rule 5-303 or Rule 5-304 is there a suggestion much less a requirement that a defendant must verbally plead guilty. *Cf.* Ohio Trial Practice § 4:23 (2017 ed.) (stating that "[a] defendant may orally plead guilty"). Rule 5-303(H) only requires that a verbatim record include "the [district] court's advice to the defendant, the inquiry into the voluntariness of the plea, including any plea agreement, and the inquiry into the accuracy of the guilty plea." This requirement was satisfied.

**{49}** Defendant's appeal should have been resolved by addressing his five appellate issues and determining whether the record supports the conclusion that not only had there been substantial compliance with Rule 5-303, but that Defendant reasonably understood the terms and conditions of the plea agreement, thereby knowingly and voluntarily entering into the plea agreement.

**{50}** I respectfully dissent from the Majority Opinion of the Court. The appellate issues as raised by Defendant and briefed by both parties should have been resolved by this Court.

_____

**M. MONICA ZAMORA, Judge**
